IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            :

    v.                                  :            CRIMINAL NO. 07-00153

TROY S. DAMIANO                     :

ORDER

AND NOW, this ___ day of May, 2019, upon consideration of the defendant's

petition for early termination of his term of supervised release, the government's response to the

petition, and the relevant sentencing factors of 18 U.S.C. § 3553(a), it is ORDERED AND

DECREED that the defendant's petition is DENIED.

_____
Hon. GENE E.K. PRATTER, J.
United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 07-00153 |
| TROY S. DAMIANO | : | |

## THE UNITED STATES' OPPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

The United States of America respectfully submits its response to the motion of defendant Troy S. Damiano for early termination of his sentence of supervised release. For the reasons set forth below, the Court should deny the defendant's motion.

Damiano seeks termination of supervised release after serving approximately 42 months of the 6-year term of supervision imposed by the Court. Damiano has not demonstrated any exceptional circumstance that would warrant early termination of the Court's supervised release sentence. Damiano offers no reason that he is unduly harmed by serving the full sentence imposed by the Court. The sentence of supervised release was necessary and appropriate, and therefore, the Court should not modify the defendant's original sentence.

## DEFENDANT'S OFFENSE CONDUCT

In April 2006, Damiano arranged for a package of heroin to be delivered from Bogota, Columbia to Reading, Pennsylvania.[1] Damiano recruited "PV," a live-in caretaker for an elderly Alzheimer's patient, to accept delivery of the package in Reading. The Alzheimer patient was a friend of Damiano. During visits to his friend, Damiano learned that PV needed to earn extra income.

---

[1] The summary of facts is based upon the Government's Guilty Plea Memorandum (ECF No. 12).

In April 2006, Damiano asked PV if Damiano could have a package sent to PV's address in Reading. Damiano stated that the package would be addressed to "Melvin Goodman, and would be sent from Bogota, Columbia. Damiano did not tell PV what would be in the package, and PV never asked Damiano what would be in it. Damiano agreed to pay PV $1,000 for accepting the package.

Homeland Security Investigation agents intercepted the package in Miami, Florida, on April 7, 2016. Agents opened the package after determining that the addressee was fictitious. The package contained 18 Polaroid photographs. Attached to each photograph was an aluminum foil package. Each aluminum package contained a tan powdery substance, which tested positive for the presence of heroin.

On April 24, 2016, a United States Postal Inspector performed a controlled delivery of the package to 20 Nassau Court, Reading, Pennsylvania. PV accepted the package on behalf of "Melvin Goodman." Thereafter, law enforcement agents executed a search warrant at 20 Nassau Court and recovered the unopened package. In a subsequent interview, PV told the agents that Damiano had approached PV in early April and asked if PV would accept a package at her house for Damiano. PV stated that Damiano told PV the package was coming from Bogota, Columbia, and would be addressed to Melvin Goodman. PV stated that Damiano agreed to pay PV $1,000 to accept delivery of the package.

Under the supervision of law enforcement agents, PV telephoned Damiano to inform him the package had been delivered and he could pick it up. On April 26, 2006, surveillance agents observed Damiano go to 20 Nassau Court and entered the residence. Agents observed Damiano, with the package tucked under his arm, open the front door of the premises to exit the house. Damiano observed law enforcement agents outside the house, and attempted to

2

re-enter the premises. A Berks County detective who had been conducting surveillance from inside the premises arrested Damiano.

Subsequent laboratory analysis of the seized material confirmed it contained heroin with a net weight of 36.9 grams.

The grand jury returned an indictment against Damiano on March 21, 2007. On May 8, 2007, Damiano pled guilty to one count of conspiracy to possess heroin with intent to distribute, and one count of possession of heroin with intent to distribute. On October 3, 2007, the Honorable Thomas M. Golden sentenced Damiano to a term of imprisonment of 46 months, to be followed by a six-year term of supervised release.

## APPLICABLE LAW

The Court may terminate a term of supervised release after the defendant has completed one year of supervision, if the Court finds, after consideration of the relevant sentencing factors of 18 U.S.C. § 3553(a), that termination "is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3583(e)(1). The defendant has the burden of showing that termination of supervised release is warranted. See United States v. Williams, 2006 WL 618849, at 1 (E.D. Pa. 2006).

The decision to grant early termination of supervised release rests with the discretion of the sentencing court. See United States v. Kay, 283 Fed. Appx. 944, 946 (3d Cir. 2008) (non-precedential). A panel of the Third Circuit has stated: "early termination of supervised release under section 3583(e) should occur only when the sentencing judge is satisfied that something exceptional or extraordinary warrants it." See United States v. Laine, 404 F. App'x 571, 573-74 (3d Cir. 2010) (per curiam) (not precedential). The fact that a defendant has behaved appropriately on supervised release is not sufficient to justify early

3

termination. "Simple compliance with the conditions of supervised release are expected and not exceptional." Id. (district court properly denied a motion to terminate supervised release where defendant wanted to "open a monastery to serve victims of domestic violence, and to travel the United States and Canada to raise money and public awareness"). See also United States v. Davies, 2018 WL 3954225, at *2 (3d Cir. Aug. 17, 2018) (not precedential) (district court did not abuse its discretion in denying motion in the absence of "new or unforeseen circumstances"); United States v. Abuhouran, 398 F. App'x 712, 715 (3d Cir. 2010) (not precedential) (affirming denial of motion where "[t]here has been nothing exceptional about Abuhouran's conduct while on supervised release."). See also United States v. Williams, 2006 WL 618849, at 1 (E.D. Pa. 2006) (defendant failed to show exceptional or change circumstances that would warrant termination of supervised release); United States v. Guilliatt, 2005 WL 589354, at 1 (E.D. Pa. 2005) (same, motion to terminate probation); United States v. Carter, 2014 WL 2112723, slip op. at 2 (W.D. Pa. 2014) ("In Kay, our Court of Appeals approved of the use of this standard, but specifically noted that it was *not* determining whether the "extraordinary" or "exceptional" standard was *the* controlling standard [.]").

The sentencing factors of § 3553(a) which the Court may consider in deciding a motion to terminate supervised release include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed ...
>
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed

4

> educational or vocational training, medical care, or
> other correctional treatment in the most effective
> manner; (...)
>
> (5) any pertinent policy statement [of the Sentencing
> Guidelines]....

See 18 U.S.C. § 3583(e). In the exercise of its discretion, the Court may consider other

§ 3553(a) factors in determining whether termination of supervised release is warranted. See

United States v. Kay, 283 Fed. Appx. at 946.

    The district courts routinely deny requests for early termination of supervised

release in the absence of a showing of extraordinary circumstances. See, e.g., United States v.

Williams, 2006 WL 618849, *1 (E.D. Pa. 2006) ("early termination of supervised release should

be ordered only in extraordinary circumstances"); United States v. Guilliatt, 2005 WL 589354,

*1 (E.D. Pa. 2005) (same); see also United States v. Caruso, 241 F. Supp. 2d 466, 469 (D.N.J.

2003) ("While Caruso has generally complied with the conditions of his probation, there is

nothing contained in the record before me of an unusual or extraordinary nature that would

warrant the early termination of his probationary sentence."). In affirming one such ruling, a

panel of the Third Circuit stated that it was unnecessary to determine whether "a showing of

significantly changed or extraordinary circumstances" is required as a matter of law, as "the

District Court seemed to be articulating a sensible basis for the exercise of its broad discretion

under that statute." United States v. Kay, 283 F. App'x 944, 946 (3d Cir. 2008) (not

precedential). As the district court in Guilliatt explained: "The conduct cited by defendant in

support of his Petition is commendable. However, it is nothing more than what is required under

the terms of defendant's probation." Guilliatt, 2005 WL 589354, at *1. If compliance with the

terms of the court's supervision were sufficient to justify early termination, "the exception would

swallow the rule." Id.; see also United States v. Lohman, 2007 WL 1430282, *1 (E.D. Wis.

2007) (if simple compliance were sufficient for early termination, "every defendant who avoided revocation would be eligible for early termination").

           The term of supervised release is an important component of the defendant's sentence. In Gall v. United States, 552 U.S. 38, 48 (2007), the Supreme Court explained that a term of supervised release is no trifling matter; it is a form of punishment that involves restrictions on liberty. Frequent post-sentencing alteration of a term of supervised release would defeat the goals of transparency and truth in sentencing that animated the Sentencing Reform Act of 1984, which implemented determinate federal sentencing while also creating the provisions for supervised release. Such a result would, in part, undermine the expectations of victims of crime, who heard the sentence imposed only to learn later that the sentence was changed. For all of these reasons, early termination of supervised release is an extraordinary remedy.

## ANALYSIS

           Damiano asserts that he has complied with all conditions of supervised release, and has satisfied all of his monetary obligations. Damiano notes he has steady employment and has maintained a supportive relationship with his family. Damiano asserts that early termination of his supervised release will afford him additional employment opportunities and enable him to visit family in Italy. Consideration of the relevant sentencing factors demonstrates that Damiano's petition does not set forth an adequate basis for modification of the Court's original sentence. The Court's original analysis of the § 3553(a) factors in fashioning the defendant's sentence was correct. The defendant has failed to identify any "fundamental change in the § 3553(a) sentencing analysis supporting, at this point, early termination of the supervised release term imposed at sentencing." Carter, 2014 WL 2112723, slip op. at 4 (W.D. Pa. 2014).

6

The defendant's offense conduct was very serious.  See 18 U.S.C. § 3553(a)(1). The defendant recruited a senior citizen, who was working as a caretaker for an Alzheimer patient, to import heroin into the United States from Colombia.  The harmful impact of the heroin trade cannot be understated.  The defendant's exploitation of PV to accomplish his goal of importing heroin speaks to the egregiousness of the offense conduct.

General deterrence and protection of the community were significant factors in the fashioning of defendant's sentence in this case.  See 18 U.S.C. § 3553(a)(2)(B).  So too, the sentence sent a clear message to the community that in a nation which operates under the rule of law, members of society must respect our nation's laws.  In light of the nature and seriousness of the defendant's offense conduct, a reduction of the defendant's sentence at this time would send the wrong message to the community.  See United States v. Caruso, 241 F. Supp.2d 466, 469 (D. N. J. 2003).  As the late Judge Weiner noted in denying a motion for early termination of probation for an attorney who was convicted of tax fraud:

> [F]or the court to now show additional leniency to a defendant who
> has demonstrated his willingness to defraud the United States
> would only undermine the public's confidence in the criminal
> justice system.

United States v. Surrichio, 1990 WL 55098, at 1 (E.D. Pa. 1990).

The interest of just punishment requires a limitation upon the defendant's liberty. Here, the conditions of supervised release promote the interest of appropriate punishment, while at the same time providing the defendant with the opportunity to rehabilitate himself.  See 18 U.S.C. § 3553(a)(2)(D).

Supervised release serves to protect the community.  See 18 U.S.C. § 3553(a)(2)(C).  Continued supervision will be advantageous to both the public and the defendant.  Continuation of the conditions of supervised release will limit the defendant's ability

7

to commit additional crimes, and enhance the defendant's rehabilitation. See United States v. Moore, 2014 WL 1765978, slip op. at 4, U.S.D.C. (M.D. Pa. 2014).

In seeking early termination, Damiani essentially asserts that he has behaved appropriately while on supervised release. As noted, that is simply what the law requires. The six years of supervised release was part of the defendant's punishment. There is no compelling reason to reduce that sentence at this time. Damiano's reporting requirements to the Probation Office are far from onerous. If Damiano wishes to travel to visit family members, he can seek permission to do so from the Probation Office and the Court. Continued supervision by the Probation Office for the full term of the Court's sentence will assure the defendant's compliance with the law. That was the judgment of the Court when it imposed sentence, and there is no reason to reconsider that judgment now.

## CONCLUSION

The sentence properly addressed the relevant sentencing factors: the seriousness of the offense, the need to protect the community and to promote respect for the law, adequate deterrence, and just punishment. Early termination of the defendant's supervised release sentence would be inconsistent with those sentencing factors. Early termination would undermine efficacy of the Court's original sentence. Reducing the term of supervised release would dilute the deterrent effect of the Court's original sentence. For these reasons, the defendant's motion for early termination of supervised release should be denied.

Respectfully submitted,

WILLIAM W. MCSWAIN
United States Attorney

/s/ Frank A. Labor III
FRANK A. LABOR III
Assistant United States Attorney

8

## CERTIFICATE OF SERVICE

Frank A. Labor III certifies that a copy of the United States' Opposition to the

Defendant's Motion for Early Termination of Supervised Release was served by United States

mail upon the defendant addressed as follows:

> Troy S. Damiano
> 111 Gail Circle
> Wyomissing, PA

/s/ Frank A. Labor III
FRANK A. LABOR III
Assistant United States Attorney

Date: May 14, 2019

9